CULLEN CREWS v. RAMON CORTEZ ET AL.

No. 1870. Decided November 18, 1908.

**1.—Damages—Lease—Dispossession of Tenant by Landlord.**

Where the tenant of land which he is cultivating for a share of the crop is wrongfully dispossessed by the landlord after the crops have been planted and partly grown, he may recover as damages the value of his contract share of the matured crop, less such compensation as could be obtained in other employment during the remainder of the term and such expense for labor outside that of himself and family as he would have incurred in maturing and harvesting the crop. (Pp. 116–118.)

**2.—Same.**

Such contract, lease of land for a share of the crop, contemplates employment of the tenant during the season, to be compensated out of the crops grown. Damages for its breach are not compensated by allowing him the mere value of his share of the growing crop at the time he was dispossessed. The deductions to be made from the value of the matured and harvested crop vary according to circumstances: they would not include the cost incurred by the landlord who dispossessed him in maturing and harvesting crop; nor would they

include, in those which the tenant would have been compelled to incur, the value of his own labor or that of his family.   (Pp. 116, 117.)

### 3.—Same—Cases Discussed and Distinguished.

Cases involving the measure of damages for breach of a contract involving plaintiff's employment:   Fagan v. Vogt, 35 Texas Civ. App., 528; Waggoner v. Moore, 45 Texas Civ. App., 308; Tignor v. Toney, 13 Texas Civ. App., 518; Rogers v. McGuffey, 96 Texas, 563, and others, reviewed, distinguished, and explained.   (Pp. 115–117.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Caldwell County.

*A. B. Storey* and *W. C. Jeffrey,* for appellant.—The measure of damages in a case of breach of rental contract is that which will with certainty most nearly compensate plaintiff for his loss for said breach, and when the contract was for a part of the crops raised, the probable amount raised, or the actual amount raised may be shown in evidence, to be considered in estimating the amount of profit plaintiff would have had, but every other fact that can be proven with reasonable certainty that affects the question of his profits in the raising of the crops must also be considered in estimating his profits and arriving at the amount necessary to make him whole, to remunerate, to compensate him for the loss suffered.   Blackstone's Com., Book 2, p. 438; Loyd v. Capps, 29 S. W., 505; Brincefield v. Allen, 25 Texas Civ. App., 258; Rogers v. McGuffy, 93 Texas, 565; McClure v. Thorpe, 68 Mich., 33; Hoy v. Gronoble, 34 Pa. St.; 9, 75 Am. Dec., 628; Crittendon v. Johnson, 40 N. Y. Supp., 87; Sedgwick on Damages (8th ed.), sec. 624; Magnolia Metal Co. v. Gale, 189 Mass., 125; United States v. Speed, 8 Wall, 77; Masterson v. Brooklyn, 7 Hill, 62; Wanhscaffe v. Pontoja, 63 S. W., 663; Crane v. Patton, 21 S. W., 466.

*McNeal & Ellis,* for appellee.—Where a tenant leases land on the halves, and the contract is breached by the landlord and the tenant ejected by the landlord without fault on the part of the tenant, the measure of damages is the value of one-half the crops produced, less what said tenant made or could reasonably have made, during the remainder of the year.   Rogers v. McGuffey, 93 Texas, 565; King v. Griffin, 39 Texas Civ. App., 497; Tignor v. Toney, 13 Texas Civ. App., 518; Brincefield v. Allen, 25 Texas Civ. App., 258.

Where the wrongdoer takes property in one condition, and bestowing labor upon it, puts it in a better condition, making it more valuable, the owner can recover its improved condition.   Cummings v. Masterson, 42 Texas Civ. App., 549; Sutherland Damages, sec. 1126.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

Certified question from the Court of Civil Appeals for the Third District as follows:

"Preliminary to certifying the hereinafter stated question, we certify that the above styled and numbered cause is now pending in this court, and that it is a suit brought by the appellee, Ramon Cortez, and his wife, Amanda Cortez, against the appellant, Cullen

Crews, to recover damages to the extent of one-half the value of a crop planted and raised on about 400 acres of land rented by appellee, Ramon Cortez, from the appellant, Cullen Crews, for the year 1905; also an additional sum of $100 salary, claimed by plaintiff, about which no other statement is necessary, as the question certified has no relation to it.

"The case was tried in the court below before a jury, and verdict and judgment resulted in favor of plaintiff in the sum of $1500, from which the appellant has perfected this appeal.

"The case made by the plaintiff's petition is substantially as follows: Plaintiff alleged that he rented from the appellant, Crews, 400 acres of farm land with the necessary rent houses. He was to take possession of the premises and cultivate the land for one-half of the crop to be raised thereon, the appellant agreeing to furnish the necessary tools, teams, and feed for the same for the cultivation of the land, and also to furnish necessary seed to plant the same. This contract was alleged to have been made on or about the first day of January, 1905; and the plaintiff alleges that he went into possession of the farm, planted and cultivated the same in a proper manner; that on or about the 5th day of June of that year the defendant, through his agent, whose conduct he consented to and ratified, by threats and violence deprived the appellees of possession of the premises and the growing crops, and that they were forced to abandon the same. It is then substantially alleged that the appellant appropriated the crop and converted the same to his own use; that the total value of the plaintiff's interest in the crop so gathered by the appellant and appropriated, was the sum of $3230, for which amount he sues as actual damages in addition to the $100 before stated. He further alleges that since the breach of the contract he, plaintiff, who was a farmer, was not able to procure work of the same kind except to the value of $25 per month, which he admits he is willing to have deducted from the actual damages that he might be entitled to recover. The suit was brought on October 10, 1906.

"The defendant by answer generally denied the averments of the plaintiff's petition, and denied that he employed the plaintiff to oversee the premises or gave him control or management of the same, but that he had employed one Flores to attend to his business, including the supervision of the farm which the plaintiff was to cultivate; that plaintiff voluntarily abandoned the premises and the crops; that one of the reasons why he did so was that the merchant who was furnishing supplies refused to further continue to do so, and that he had become liable and bound for an amount of supplies which would consume his interest in the crops to be raised; that after plaintiff had abandoned the premises and crops the defendant took possession and cultivated, gathered and marketed the same, at the reasonable expenditure of $2712, which amount he pleaded as an offset to plaintiff's demand, on the theory that the plaintiff would only be entitled to a one-half interest in the crop, less his proportionate share of the costs and expenses necessarily incurred by the defendant

after he took possession.   Other facts are stated in the answer which it is unnecessary to repeat.

"In deference to the verdict of the jury, and in view of the fact that there is evidence to support it, we find the following facts, although there is upon some of the material questions a conflict of evidence:

"We find that the appellant and appellee did enter into the contract substantially as pleaded by the plaintiff; that the plaintiff took possession of the farming lands, planted the crops, and properly cultivated the same, which consisted principally of corn and cotton, and which was in a fair state of cultivation and in a fairly prosperous condition on or about the 5th day of June, 1905, when the defendant, through his agent and manager, Flores, and with the knowledge and subsequent ratification of the conduct of Flores, by threats and violence forced the plaintiff and his family and his hired hands to abandon the premises and the crops, and by such unlawful and wrongful means the defendant then and thereafter took possession of the premises and crops and caused the crops to be cultivated and gathered and appropriated to his own use the proceeds.   There is evidence which tends to show that the value thereof was about the amount alleged by the plaintiff, which was a sum more than that awarded to him by the verdict of the jury.

"On the other hand, we find that there is some evidence in the record on behalf of the defendant tending to show that the plaintiff did not abandon and leave the premises and crops on account of the fact that in safety to himself and family he was forced so to do, but that he voluntarily abandoned the same; and the defendant's evidence shows that the entire value of the crop so produced on the premises amounted to about $2498, and that in order to properly cultivate, gather and market the crop after it was abandoned by the plaintiff, it was necessary for the defendant to expend a considerable sum of money, near the amount alleged by him in his answer; and there is some evidence from which the conclusion can be reached that such amount so expended was necessary and reasonable.

"These are all the facts and evidence we find it necessary to state in order to understand and properly give answer to the question certified.

"The trial court, on the measure of damages, and in accordance with the measure pleaded by the plaintiff, instructed the jury that if the plaintiff was, on the grounds alleged, forced to abandon the premises and crops, and thereby the defendant wrongfully deprived him of possession of the same, then the plaintiff would be entitled to recover one-half of the value of the entire crop cultivated, matured and raised upon the premises, less such a sum as the jury might believe from the evidence the plaintiff and his family could have earned during the period they were deprived of the possession of the same.   The court also instructed the jury that if they believed that the plaintiff voluntarily abandoned the premises and crops and was not forced to do so, then they should return a verdict in favor of the defendant.

"The defendant in the court below requested a charge substantially

to the effect that, although the plaintiff was driven from the leased premises, as alleged, that if the plaintiff was entitled to recover the defendant would be entitled to recover on his cross-action or off-set against the plaintiff the reasonable amount expended for the cultivation, gathering and marketing the crop after the time the defendant took possession. This charge was refused. By proper assignments of error the defendant complains of the action of the court in refusing this charge, and has also by assignments complained of the charge of the court on the measure of damages, as stated, on the ground that the plaintiff is only entitled to compensation for the value of his part of the crop, less the reasonable cost and amount expended by the defendant in cultivating, gathering and marketing the same.

"In deciding similar questions in cases of this character there is an apparent conflict between the decisions of the Courts of Civil Appeals upon this subject. This conflict is illustrated on the one hand by the case of Fagan v. Voght, 55 Texas Civ. App., 528, and on the other by the case of Waggoner v. Moore & Stevens, 45 Texas Civ. App., 308; the first case mentioned decided by the Court of Civil Appeals of the First District, and the second case mentioned decided by the Court of Civil Appeals of the Second District. And, in this connection, we desire to call the court's attention to another line of cases which may have some bearing upon this question: Missouri, K. & T. Ry. Co. v. Starr, 22 Texas Civ. App., 353; Brown v. Pope, 65 S. W., 42, and Cummings v. Masterson, 42 Texas Civ. App., 549.

"We do not intend to certify the conflict of decision, but we propound to the Supreme Court the following question:

"In view of the facts as found by us as sustaining the verdict in favor of the plaintiff on the ground that he was illegally and wrongfully deprived of possession of the premises and the crops produced thereon, did the trial court in its charge submit the correct measure of damages? Or, in other words, would the defendant in such a case be entitled to charge against the plaintiff any part of the reasonable cost and expense of cultivating, gathering and marketing the crop after the time that the defendant wrongfully and illegally took possession of the same and forced the plaintiff to abandon the same?"

In the case of Rogers v. McGuffey, 96 Texas, 565, the question as to the measure of damages for the breach of such a contract as that now in question was discussed and we said: "But contracts like the one in question have additional elements. The parties entering into them stipulate for shares in the crops to be produced as the benefit to be derived from them. The owner of the land expects the share reserved to himself as a return for the cultivation of his land and his other outlay. The benefits expected by the other party are employment and the stipulated return for his labor, and sometimes, a home for the time. To deprive him of these benefits is to deprive him of that which, in the very contract, both parties to it contemplate he shall receive. It would seem to follow necessarily that his damages should be compensation for what he thus lost. In such a con-

tract the parties enter into a joint business enterprise and stipulate what shall be the advantages to each. When one wrongfully deprives the other of those advantages he should be required to compensate him for that which the contract stipulated he should have. The objects of the contracts have a close analogy to those of a partnership and, insofar as employment for the labor of one of the parties is one of the purposes, to the contract for personal service."

Further in that opinion it is said: "It is true that the plaintiff is not necessarily entitled to recover as fully as if the contract had been performed, it often being necessary to make proper deductions in order to ascertain the true amount of his damages. But it is still true that the probable results of the contract, if executed, its 'value,' as Judge Wheeler calls it in Hassell v. Nutt, are to be the basis of the inquiry. Hearne v. Garrett, 49 Tex·s, 626. What deductions should be made must, as indicated by the opinion in the case last cited, depend upon the facts of particular cases."

The views thus expressed are sustained by the following authorities: Taylor v. Bradley, 39 N. Y., 129; Depew v. Ketchum, 75 Hun, 227; Jewett v. Brooks, 134 Mass., 505; Bowers v. Graves, 8 S. D., 385.

In Rogers v. McGuffey, and in Waggoner v. Moore & Stevens, 45 Texas Civ. App., 308, the contracts were broken before any crops had been brought into existence, and therein they differ from Fagan v. Voght, 35 Texas Civ. App., 528, and Tignor v. Toney, 13 Texas Civ. App., 518, in which the decisions were based on the doctrine of wrongful and intentional conversion of personal property, as expressed in the cases last cited in the present certificate. That doctrine is fully stated in Wooden Ware Co. v. United States, 106 U. S., 432, and in the cases there cited. For reasons to be given further on we are of the opinion that it does not apply to this case. The damages which the plaintiff in this case is entitled to recover, on facts such as are found by the jury and by the Court of Civil Appeals, are to be ascertained, as indicated in Rogers v. McGuffey, by finding the value of the contract to him, or, in other words, of the pecuniary benefits which would have accrued to him had he been allowed to perform it fully. The claim asserted seems to be for the value of the stipulated share of the matured crops, and we shall assume that it would have constituted the entire compensation to plaintiff for fully performing the contract had it been received as the result of such performance. He was thus to receive all the return contemplated for the labor and expense of making and harvesting the crops. The question arises, is he to receive the value of all of it when he was relieved of part of the labor and, perhaps, of other expense that would have been necessary to full performance? As was said in Rogers v. McGuffey, such contracts sometimes are intended to furnish employment for the labor of the tenant or cropper. The profit to be realized out of the crops over and above the value of the labor and other outlays expended in making them is therefore not all that is contemplated in such contracts. Employment for the tenant or cropper when so secured is valuable, whether a profit over and above such labor and other expenses is realized or

not. And this may be true as to the labor of members of his family which he can control and utilize without extra expense.

By the breaking of the contract he and others whose services he is thus entitled to may be thrown into enforced idleness and thus he may be denied one of the benefits contemplated in the making of the contract. Such contracts so far partake of the nature of those for personal service as to make it just to take into consideration the principles by which the damages for breaches of those contracts are ascertained, and, in cases where such results as we have just indicated have flowed from the breach, to deduct, not the entire value of the labor that was necessary to the making of the crop, but only such sums as those so thrown out of employment could by reasonable diligence have earned thereafter. But all other expenses, including those for hired labor, which the cropper would have incurred in performing his part of the contract should be deducted from the value of his share of such crops as he would have made, for the reason that he would have realized from the matured crops only the difference between the value of his share and the cost of their production. Whether or not other deductions should have been required besides that mentioned in the charge we can not definitely determine, for the reason that the certificate does not state what the evidence was upon the subject.

The plaintiff did not have the right to recover the entire value of the stipulated share of the crops he would have made, if, in order to make them, further expenditures, such as we have indicated, would have been necessary on his part, but he had only the right to recover the difference between such value and the amount of such further outlays added to the deductions to be made as for such earnings in other employment as are above indicated. Expenses incurred by defendant for labor, or other things, in maturing and harvesting the crops are not to be deducted in estimating plaintiff's damages. The plaintiff, if the facts be as found, is not chargeable with expenses incurred by the defendant. Burwell v. Brodie, 134 N. C., 540; Jefcoat v. Gunter, 73 Miss., 539; Foley v. S. W. Land Co., 94 Wis., 329. The crops, as we gather from the certificate, were to be made by the labor of plaintiff and of others employed by him. The expenses he would have incurred might have been more, or less, than those incurred by defendant, and the crops he would have raised might have been better, or worse, than those the defendant raised. Of course, in supposable cases there might be no discernible differences in the results of their management, in which case those obtained by the defendant might be taken as evidence of those which the plaintiff would have obtained; but at last the plaintiff's rights are to be judged by that which would have been the result of his performance of the contract.

It may be that the trial court proceeded upon the theory laid down in the cases of Tignor v. Toney and Fagan v. Voght, supra. We have not found any other authority for the application of that doctrine to such cases as this, where the wrong committed was the breach of an executory contract for the raising of crops, the breach occurring when the crops were immature. The authorities cited above

from other States lay down substantially the measure of damages as we have defined it, applied in cases where the crops were growing as well as in those in which they had not been sown when the breaches occurred.

The doctrine applicable where the property of one is taken and converted by another by a wilful trespass and without bona fide claim of right does not furnish the rule for cases like this, where the wrong done consists in the breach of a contract under which the crops are to be produced. The rights of the parties are founded on the contract, and the wrong done is compensated for when the injured party is allowed the full value which he would have produced, less the expense of which he has been relieved. That difficulties exist in applying this measure of damages is recognized by all, but it is the logical and just one and the trouble encountered is not insuperable.

We have endeavored to so state the law as to answer the question certified substantially, without being able, for lack of fuller information as to the facts, to determine whether or not the charge given was correct. That question must depend upon whether or not the law as we state it to be was properly applied to the evidence.