**ORR et ux. v. ENGLE.  (No. 2718.)**

Court of Civil Appeals of Texas. Amarillo.
April 27, 1927.

Landlord and tenant ⬅➡331(6)—Reasonable cost of crop that defendant, claiming damages for wrongful eviction, would have raised held erroneously excluded.

On issue of damages for wrongful eviction under lease for loss of crop, which defendant probably would have raised, it was error to refuse to permit plaintiff to offer testimony as to reasonable cost of planting and marketing probable crop.

Error from District Court, Deaf Smith County; Reese Tatum, Judge.

Suit in trespass to try title by J. S. Orr and wife against Herman W. Engle, in which defendant filed a counterclaim. To review the judgment, plaintiffs bring error. Reversed and remanded.

Carl Gilliland, of Hereford, for plaintiffs in error.

W. E. Dameron, of Hereford, for defendant in error.

JACKSON, J. This is a suit in trespass to try title, instituted in the district court of Deaf Smith county, Tex., by the plaintiffs J. S. Orr and his wife, Maude Orr, against the defendant, Herman W. Engle, to recover the southeast one-fourth of section 87, block K-4, situated in Deaf Smith county, Tex., and a rental of $25 per month for the premises during the time defendant had withheld from the plaintiffs possession.

Plaintiffs procured to be issued a writ of sequestration which was duly served, defendant was dispossessed, and, failing in the time allowed by law to replevy the land, the plaintiffs executed their replevy bond, and on June 16, 1925, the premises were placed in their possession.

The defendant answered by general demurrer, and especially denied that the plaintiffs were in possession of the premises, as alleged and pleaded that he was, for four years prior to having been dispossessed, under the writ of sequestration, in possession of the land involved; that at the time the

writ was served upon him, he held possession by virtue of a lease contract ending May 1, 1926, made with him by W. S. Higgins, who was the owner of the land. He pleads his rental contract in the following language:

"Said rental agreement being made on the customary crop rent basis of one-third of crop to owner and two-thirds of crop to the tenant; that at the same time the said W. S. Higgins leased the defendant, Herman W. Engle, the southwest one-fourth of said half section for grazing purposes at the customary rental basis of 20 cents per acre. That at the time of the rental agreement regarding the southeast quarter only about 80 acres of the same was in good state of cultivation, and the division on one-third and two-thirds basis only applied to that portion of the land in good state of cultivation. That it was further agreed between the parties that said Engle should have all the crop grown on that portion of said quarter section not in a good state of cultivation, and which Engle was to break out, in the approximate amount of 60 acres, 40 acres of which had at one time been in cultivation, and 20 acres of which was in sod land; all of said crop on the 60 acres being the compensation to said Engle for breaking said land."

That after said rental contract was entered into, W. S. Higgins died intestate, in the month of February, 1925, leaving the defendant in possession of the premises; that after his death, his estate was partitioned and the land rented by the defendant was set apart and conveyed to Maude Orr, the wife of J. S. Orr. That about the time said lands were conveyed to the plaintiffs, March 24, 1925, they began negotiations with him to secure possession of the rented premises, but no agreement was reached; that thereafter the plaintiffs filed suit, on June 3, 1925, in the form of trespass to try title, and had issued a writ of sequestration under which defendant was dispossessed and the premises delivered to plaintiffs, under their replevy bond; that at the time he was dispossessed he was complying with his rental contract with W. S. Higgins.

In a trial amendment he alleges that he had made adequate arrangements to cultivate the land in a farmerlike manner and had sufficient farm machinery, teams, and labor to carry out his contract; that he had planted 40 acres of land in Kaffir corn, which would have raised two tons of heads per acre of the reasonable market value of $16 per ton, two-thirds of which of the value of $850 he would have received; that he intended to, and, had he been permitted, would have planted the other 40 of the 80 acres on which he would have made 1 ton per acre of the value of $16 per ton, two-thirds of which, or $425, he would have received; that he intended and would have planted, had he been permitted, and grown on the remaining 40 acres, a one-half ton per acre, of the reasonable market value of $16 per ton, all of which he would have received, which he alleges to

be $320; that he was paying his help by the month, and could have properly cultivated the land without additional expenses, and would have marketed the grain at not more than $1 per ton. He alleges that the writ of sequestration was wrongfully and maliciously sued out by the plaintiffs, for the purpose of appropriating to themselves the benefit of the labor and work defendant had performed and of depriving him of his part of the crop, to his actual damage in the above-named sums, and that the writ was sued out without probable cause, for the purpose of vexing and harassing and with the intention of maliciously injuring and harming him, for which he prays exemplary damages in the sum of $2,000.

By a trial amendment, in answer to the facts set up in defendant's trial amendment, the plaintiffs pleaded general demurrer, denied that any rental contract was made with W. S. Higgins, but alleged that if such contract was made it was conditioned on defendant's planting, in due season, a part of the land in cotton, and that said contract was wholly breached as the defendant had not up to the 3d of June, 1925, planted any cotton and previous thereto had asserted that he was not going to plant any cotton on said premises.

This we consider a sufficient statement of the pleadings.

In response to the special issues necessary to a disposition of this appeal, submitted by the court, the jury found that W. S. Higgins leased the land to the defendant for the year 1925; that the reasonable market value of two-thirds of the maize and Kaffir which defendant would probably have grown on the land during the term of his lease was $900; that the writ of sequestration was sued out wrongfully, maliciously, and without probable cause; and that the defendant was entitled to $1 as exemplary damages.

The plaintiffs recovered title and possession of the premises, but were denied a recovery for rent. The court entered judgment, on the findings of the jury, that the defendant have and recover from the plaintiffs the sum of $901, with interest at 6 per cent. per annum, from November 25, 1925, and for costs.

The case is before us on writ of error prosecuted by the plaintiffs, hereafter called appellants, to have certain alleged errors of the trial court reviewed.

The appellee has filed no brief.

The appellants present as error the action of the trial court in refusing their requested peremptory instruction, among other things, for the reason that the testimony offered fails to prove the rental contract as alleged in appellee's answer. The record discloses that W. S. Higgins died after the alleged rental contract was made, hence the appellee was not allowed to testify to the terms and con-

ditions of the rental contract. The only testimony offered as to the provisions of such contract was by the witness, Claude Higgins, a brother of Maude Orr, one of the appellants, who testified:

"Me and my father was there in the back of the First National Bank, figuring, and Pete came in and says, 'Mr. Higgins, are you going to let me have this piece of land?' and he says, 'I don't know, Pete, it looks like you are running to town too much to farm,' and he says, 'You will admit I have as good a crop as my neighbors,' and he says, 'Yes.' And they talked on a while and he says, 'I guess I will let you have it, if you put some in cotton,' and Pete says, 'They tell me all it takes is a weak mind and strong back, and I have both.' The land was about one-half section, about 20 miles north of town, but I don't know the description of it. There was nothing more said in that conversation, and the conversation ended. The conversation took place last year. They went ahead and talked about the crop, how they wanted it handled, the wheat and some cotton, and the agreement as to what rent Pete would give, for the year 1925. There was some conversation that Pete would put in some cotton in the year 1925. Pete was in possession of the land at that time, and the conversation between Pete and my father was with reference to the following year, 1925."

It will be noted that this testimony does not show that the contract was made on the "customary crop rent basis of one-third of crop to owner and two-thirds of crop to tenant," neither does it show that the appellee was to have two-thirds of the crop raised on the 80 acres, which "was in a good state of cultivation," nor that the appellee "should have all of the crop grown on that portion of said quarter section not in a good state of cultivation." The most that is shown by the evidence is that the parties talked about the crop, how it was to be handled, the wheat and some cotton, "and the agreement as to what rent Pete would give." As to what such agreement was the record is silent.

Under the pleadings, in order for the court and jury to determine the damages that appellee sustained by being wrongfully dispossessed, it was necessary for the testimony to show the part of the crop, that would probably have been raised, that appellee was entitled to.

Appellants challenge as error the action of the trial court in refusing to permit him to offer testimony to show what would be the reasonable cost of planting, cultivating, harvesting, and marketing the probable crop that appellee would have raised on the premises, had he not been dispossessed by the sequestration proceedings. This assignment is sustained. Crews v. Cortez, 102 Tex. 111, 113 S. W. 523, 38 L. R. A. (N. S.) 713; Smith v. Milam (Tex. Civ. App.) 143 S. W. 293; Springer v. Riley (Tex. Civ. App.) 136 S. W. 577; Brooks v. Davis (Tex. Civ. App.) 148

S. W. 1107; Bost v. McCrea (Tex. Civ. App.) 172 S. W. 561; Williams v. Gardner (Tex. Civ. App.) 215 S. W. 981.

Appellants' other assignments involve the same or kindred questions to those considered under the preceding assignments, and we deem it unnecessary to consider them separately.

For the errors discussed, the judgment is reversed and the cause remanded.